UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| DAVID SHAUN NEAL,<br><br>Plaintiff,<br><br>v.<br><br>ASTA FUNDING, INC., GARY STERN, MARY CURTIN, SETH BERMAN, CYNTHIA SCHATZMANN (HORVAT), LOUIS PICCOLO, DAVID CAVILL, and JOHN DOES 1-10,<br><br>Defendants. | Civ. No. 13-3438 (KM) (MAH)<br><br>AMENDED OPINION<br>(Relates to Document No. 44) |

## KEVIN MCNULTY, U.S.D.J.:

This matter comes before the Court on the Defendants' motion (Docket No. 25) to dismiss the Complaint (Docket No. 1 ("Compl.")) in its entirety pursuant to Rules 12(b)(6) and 12(b)(1), Fed. R. Civ. P. In addition, the *pro se* plaintiff, David Shaun Neal, has filed a motion to stay a pending arbitration and to impose sanctions pursuant to 28 U.S.C. § 1927 (Docket No. 28). In response to that motion, the Defendants have cross-moved for sanctions and for injunctive relief (Docket No. 34). Defendants' motion to dismiss includes the contention that Neal is bound by an arbitration agreement and should therefore "be compelled to pursue any Counts that survive . . . in the Arbitration and this action [should be] stayed" pursuant to 9 U.S.C. §§ 3 and 4 (Docket No. 25-1 at 28).

The essence of Defendants' position is that these claims should be pursued, not here, but in an arbitration that is already pending (Docket No. 25-1 at 28). The essence of Neal's position is that the arbitration should be stayed and his claims should proceed in this action (and others).[1] Whether or

---

[1] In addition to the present action, the Court is aware of the following actions

1

not Neal's claims are arbitrable, however, I will stay this action pending the resolution of the pending arbitration. Consequently, I will administratively terminate Defendants' motion to dismiss the Complaint, without prejudice.

## I. BACKGROUND

The Complaint alleges that Neal was an employee of Defendant ASTA. Essentially, the Complaint alleges that ASTA wrongfully terminated Neal's employment because he blew the whistle on unlawful or unethical conduct of ASTA and its employees. *See* Compl. at ¶¶ 99–100, 338. More specifically, the Complaint asserts the following claims: (1) Violation of the Dodd-Frank Wall Street Reform and Consumer Protection Act, 12 U.S.C. § 5567 ("Dodd-Frank"); (2) Violation of the Sarbanes Oxley Act, 18 U.S.C. § 1514A ("SOX"); (3) Violation of New Jersey's Conscientious Employee Protection Act, N.J. Stat. § 34:19-1 ("CEPA"); and (4) Violation of public policy under *Pierce v. Ortho Pharmaceuticals*, 84 N.J. 58 (N.J. 1980) (holding that an "employee at will has a cause of action for wrongful discharge when the discharge is contrary to a clear mandate of public policy"). The fifth and final count is a general request for punitive damages.

The corporate Defendant, ASTA, is a debt acquisition and collection company. Individual Defendants Gary Stern, Mary Curtin, Seth Berman, and David Cavill are employed by ASTA. Compl. at 1-2; *see* Docket No. 25-1 at 3. Defendant Cynthia Schatzmann "is a former employee of ASTA and is believed to be a current employee of ASTA." Defendant Louis Piccolo ("Piccolo") is "a current independent director of ASTA." *Id.*

---

that Neal has personally filed which arise from his dispute with ASTA: (1): A whistleblower action in the District of New Jersey that was voluntarily dismissed (*New World Solutions, et al. v. ASTA Funding, Inc. et al*, No. 2:12-cv-5307); (2): a whistleblower complaint with the Department of Labor (No. 2-1750-13-002); (3): a Fair Debt Collection Practices Action in the Southern District of New York that was recently dismissed (*Vivaudou et al v. ASTA Funding, Inc.*, 12-cv-9089); (4): a defamation action in the Southern District of New York (*Neal v. ASTA Funding Inc., et al.*, No. 7:13-cv-2176); (5): a defamation, malpractice, and intentional infliction of emotional distress action before this Court (*Neal v. ASTA Funding, Inc. et al*, No. 2:13-cv-4814); (6) a fraud and criminal coercion action before the Supreme Court of New Jersey, Orange County (*Neal v. American Arbitration Association et al.*, No. 2013-cv-7991); and (6): a recently-filed complaint in this Court seeking a declaratory judgment (*Neal v. ASTA Funding, Inc.*, No. 2:13-cv-6981). Additionally, NWS, with Neal as its representative, filed a counterclaim in the original arbitration initiated by ASTA.

The Complaint alleges that Neal began his employment with ASTA in 2004 and that his company, New World Solutions ("NWS"), was retained to do certain Information Technology work for ASTA in 2009. Neal alleges that he was "a vocal critic of the lackadaisical attitude of senior management regarding legal compliance," and that he "repeatedly complained to ASTA that it lacked a compliance office." He further alleges that he "informed senior management at ASTA, including Defendant Stern, of the wrongful, illegal, and/or unethical activity" committed by ASTA. Compl. at ¶¶ 99–101. Neal alleges that Defendants retaliated against him for reporting these activities. Specifically, he alleges that Stern reduced his salary, set impossible budget goals, terminated his employment, and commenced a frivolous arbitration action against him. He also alleges that Curtin, Berman, Schatzmann, Cavill, and Piccolo retaliated against him by "transmitting false and disparaging statements to various employees of ASTA," and that Curtin, Schatzmann, and Cavill also "suggest[ed] that Neal's employment be terminated." Compl. at 321–334.

Defendants deny that ASTA employed Neal. On the contrary, according to ASTA, it retained NWS, a company co-owned by Neal, as an independent contractor to perform Information Technology-support ("IT") services. That relationship was embodied in a written Information Technology Services Agreement, dated July 1, 2009. *See* Docket No. 25-3 (Exhibit A) ("Consulting Agreement"). That Consulting Agreement had a term of three years. *Id.* ASTA states that, on June 27, 2012, it terminated the Consulting Agreement because NWS had allegedly failed to perform as warranted and inflated its billing. (Arbitration Case No: 18 117 Y 00925 12; Docket No. 25-1 at 6–7; Compl. ¶¶ 324, 373).

The Consulting Agreement contains a broad clause providing for arbitration of disputes under the Commercial Arbitration Rules of the American Arbitration Association ("AAA").[2] After terminating the Agreement, on July 26,

---

2     The arbitration clause of the Consulting Agreement reads as follows:

> All matters regarding the performance of IT Services under this Agreement shall be brought to the attention of the IT Services Managers assigned to ASTA and NWS. IT will be the responsibility of the IT Services Managers to communicate and develop a resolution for such matters. In the even that a dispute, controversy, or claim between the Parties arises directly or indirectly out of or in connection with this Agreement cannot be resolved by the IT Services Managers, either Party may elect to have such dispute, controversy, or claim resolved by arbitration in accordance

3

2012, ASTA filed a claim in arbitration with AAA alleging that NWS breached the Consulting Agreement by failing to perform as required under the agreement and by inflating its billing. Robert E. Bartkus, Esq., was duly appointed as arbitrator by the AAA. According to ASTA's filings, Neal has moved twice to remove Mr. Bartkus as arbitrator, but the AAA Administrative Review Counsel has denied those motions. (Docket No. 34-1 at 8). In the arbitration, NWS filed a counterclaim alleging that ASTA had itself breached the Consulting Agreement. (Docket 43-1, Exhibit 3 ("Counterclaim")).

After filing the arbitration case, ASTA learned that Neal had allegedly accessed confidential information, gained personal access to ASTA employees' email accounts, and copied certain confidential information. According to Defendants, Neal thereby violated confidentiality covenants that are contained in the Consulting Agreement, as well as a confidentiality order issued by the Arbitrator. Indeed, the Defendants say, the allegations in Neal's Complaint in this action are based on those confidential materials.

In the arbitration, the Arbitrator has entered a Turnover Order that, *inter alia*, restrained NWS and "its principal Shaun Neal" from disclosing any confidential information; ordered NWS to return all copies of documents that related to ASTA other than discovery materials produced during the arbitration; and restrained NWS and Neal from using any of these materials for any purpose other than for the arbitration proceedings. *See* Docket No. 43 (Exhibit 5); Docket No. 34-1 at 10–11. Neal then moved in this Court to vacate the Arbitrator's Turnover Order. Magistrate Judge Hammer denied that motion (Docket No. 35), and Neal recently moved for reconsideration of Judge Hammer's order (Docket No. 39).

On August 1, 2013, ASTA moved in the arbitration to supplement its statement of claim and assert new claims against NWS and Neal for alleged misappropriation of confidential information. Docket No. 34-1 at 14. At first, the Arbitrator allowed supplementation of the claims against NWS, but did not

---

with the Commercial Arbitration Rules of the American Arbitration Association ("AAA"). Any arbitration shall be conducted by arbitrators approved by the AAA and mutually acceptable to the Parties. If the Parties are unable to agree on the arbitrator(s), then the AAA shall select the arbitrator(s).

Consulting Agreement at § 6.2. The Agreement also provides that it is to be construed in accordance with New Jersey state law.

allow the addition of Neal as a party, because the request came too close to the scheduled hearing date. *Id.* Therefore, on September 3, 2013, ASTA initiated a second arbitration against Neal and the former co-owner of NWS, Robert F. Coyne. In that second arbitration, ASTA alleged claims of consumer fraud, violations of the Consumer Fraud and Prevention Act, and other New Jersey computer-related offenses. The original and second arbitration were recently consolidated. In connection with that consolidation, the Arbitrator, Mr. Bartkus, examined his own jurisdiction and held that Neal was individually subject to the arbitration agreement. (Docket No. 42-1 (Exhibit 6) ("Consolidation Order")). The arbitration hearing, originally scheduled for September 18, 2013, has been adjourned, and the arbitration is proceeding on a consolidated basis.

## II. DISCUSSION

### A. Arbitrability Under the Federal Arbitration Act and the Court's Power to Stay Litigation Pending Arbitration

The Federal Arbitration Act ("FAA") reflects a longstanding "liberal federal policy favoring arbitration agreements . . . ." *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). The FAA is designed to "ensure judicial enforcement of privately made agreements to arbitrate." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 219 (1985). Congress' "clear intent" in passing the FAA was "to move the parties to an arbitrable dispute out of court and into arbitration as quickly and easily as possible." *Moses H. Cone Memorial Hosp.*, 460 U.S. at 22. To fulfill that goal, courts must "rigorously enforce agreements to arbitrate . . . ." *Dean Witter Reynolds, Inc.*, 470 U.S. at 221. The FAA established that, "as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone Memorial Hosp.*, 460 U.S. at 24–25; *see also Barrowclough v. Kidder, Peabody & Co.*, 752 F.2d 923, 938 (3d Cir. 1985) (ambiguous or unclear cases should be resolved in favor of arbitration).

To implement that federal policy in favor of arbitration, Section 3 of the FAA provides that issues within the scope of an arbitration agreement shall be referred to arbitration, and that court proceedings shall be stayed:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration . . ., the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceedings is referable to arbitration under such agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the application for the stay is not in default in proceeding with such arbitration.

FAA, 9 U.S.C. § 3.[3] When the parties and issues significantly overlap between a court proceeding and an arbitration, a court may stay the entire court action. That is true even where the overlap is not complete, for example, even if some of the parties or issues are not subject to arbitration. *Crawford v. W. Jersey Health Sys. (Voorhees Div.)*, 847 F. Supp. 1232, 1240 (D.N.J. 1994) (citing *Tenneco Resins, Inc. v. Davy Intern.*, 770 F.2d 416 (5th Cir. 1985); *American Home Assur. Co. v. Vecco Concrete Constr. Co.*, 629 F.2d 961 (4th Cir. 1980); *Lawson Fabrics, Inc. v. Akzona, Inc.*, 355 F. Supp. 1146 (S.D.N.Y.), *aff'd*, 486 F.2d 1394 (2d Cir. 1973); *Harman Elec. Const. Co. v. Consolidated Eng. Co.*, 347 F. Supp. 392, 397 (D. Del. 1972)).

Setting aside the mandate of the FAA, a district court also possesses the inherent discretion to control its docket. As a component of that discretion, the court has the inherent power to stay its own proceedings. *See Moses H. Cone Mem'l Hosp.*, 460 U.S. at 21 (citing *Landis v. North American Co.*, 299 U.S. 248, 254–255 (1936)). In *Landis*, for example, the Court stated:

> [T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants. How this can best be done calls for the exercise of judgment, which must an even balance. . . . True, the suppliant for a stay must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to someone else. Only in rare circumstances will a litigant in one cause be compelled to

---

[3] The contract containing the arbitration clause must "evidence a transaction involving commerce." *Crawford v. W. Jersey Health Sys.*, 847 F. Supp. 1232, 1240 (D.N.J. 1994) (quoting 9 U.S.C. § 2). That requirement is met when the contractual activity affects or facilitates commerce, even tangentially. *Id.* (citing *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 401–02 n. 7 (1967)). Neither party suggests that the commerce connection is an issue here.

6

stand aside while a litigant in another settles the rule of law that will define the rights of both.

299 U.S. at 254–55 (citations omitted). In *Merritt-Chapman & Scott Corp. v. Pennsylvania Turnpike Commission*, the Third Circuit, citing *Landis*, reasoned that a stay of court proceedings pending arbitration is a remedy that is "within the inherent power of the court and does not require statutory authority." 387 F.2d 768, 773 (3d Cir. 1967); *see also Mason-Dixon Lines, Inc. v. Local Union No. 560, Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am.*, 443 F.2d 807, 809 (3d Cir. 1971) (citing *Yale & Towne Mfg. Co. v. Local Lodge 1717, Machinists*, 299 F.2d 882 (3d Cir. 1962) ("Certainly, the normal power of a court to do equity enables it to postpone action on a complaint pending the outcome of a procedure for resolving such a dispute upon which the parties have agreed."); *Vespe Contracting Co. v. Anvan Corp.*, 399 F. Supp. 516, 519 (E.D. Pa. 1975) (holding that the court "need rely neither on the United States Arbitration Act nor the Pennsylvania Arbitration Act . . . in order to support a decision to grant a stay of proceedings pending arbitration").

### B. A Referral of Claims to Arbitration and a Stay of These Proceedings Pending Arbitration is Appropriate

#### 1. [Purposely omitted]

#### 2. Stay of this case pending arbitration

The substantive issues that either are being decided or are subject to being decided in arbitration are intertwined with the claims asserted in the Complaint, and may affect their resolution. Even if some or all of the claims in the Complaint were found non-arbitrable, a stay of this action would be appropriate. A stay serves the interests of judicial efficiency and the broad federal policy in favor of free arbitration of the disputes that are currently before the Arbitrator. Under Section 3 of the FAA and this Court's broader discretionary powers, this action will be stayed pending the outcome of arbitration.

First, a stay is appropriate under Section 3 of the FAA. At least one issue (and possibly all) "involved in [this] suit or proceedings is referable to arbitration" under the Consulting Agreement's arbitration clause. 9 U.S.C. § 3. As discussed above, the claims asserted in the Complaint appear to be arbitrable, and the Arbitrator may well so find. Under such circumstances, a stay is warranted. *See id.*; authorities cited at pp. 5–6, *supra*. Any doubts as to

whether a particular party or sub-issue is subject to arbitration need not preclude a stay. At the very least, "significant overlap exists between parties and issues . . . ." *Crawford* 847 F. Supp. at 1240. Under such circumstances, a Section 3 stay of court proceedings is appropriate.

Second, this Court has the inherent power to stay proceedings pending arbitration. I find that a stay is appropriate, taking into account all competing interests. *See generally Landis v. N. Am. Co.*, 299 U.S. at 254–55; authorities cited at pp. 6-7, *supra*. In particular, a court may stay proceedings in the interest of efficiency where the issues in arbitration are related to (if not strictly dispositive of) the issues before the court. Thus, in *Leyva v. Certified Grocers of California, Ltd.*, the Ninth Circuit held that that, even where Section 3 of the FAA does not apply, a trial court may properly stay a proceeding pending arbitration where "it is efficient for its own docket and the fairest course for the parties to enter a stay of an action before it, pending resolution of independent proceedings which bear upon the case." 593 F.2d 857, 863–64 (9th Cir. 1979). The court reasoned that "[t]his rule applies whether the separate proceedings are judicial, administrative, or arbitral in character, and does not require that the issues in such proceedings are necessarily controlling of the action before the court." *Id*; *see also Nederlandse Erts-Tankersmaatschappij, N.V. v. Isbrandtsen Co.*, 339 F.2d 440, 441–42 (2d Cir. 1964) (reasoning that the district court had the inherent power to stay proceedings pending an arbitration where defendants were not party to the arbitration agreement, but the issues involved in the case may be determined in arbitration).

The resolution of the arbitration will involve issues overlapping and bearing upon disputes raised in this action. The retaliation-based claims that Neal brings before this Court involve factual and legal issues closely related to those in the arbitration. Neal of course is identified with NWS. All of the opposing parties are either ASTA employees or are otherwise implicated as a result of their association with ASTA. In the arbitration, ASTA has argued that it terminated the Consulting Agreement for a legitimate reason: because NWS inflated billing and did not perform as required under the Agreement. A determination that ASTA had a legitimate reason for terminating the relationship with NWS would be highly relevant to Neal's claim, for example, that he was fired on a retaliatory basis, even assuming that he could establish that his relationship with ASTA was that of employee and employer. I agree with the Defendants that the claims in this action "are inextricably intertwined with the services provided by NWS pursuant to the Consulting Agreement." Docket No. 25-1 at 27. And it would be inadvisable to have these intertwined

claims proceed simultaneously in court and in arbitration; such a procedure would be rife with opportunities for mutual interference, inconsistent rulings, and general procedural confusion.

ASTA initiated arbitration on July 26, 2012, well over a year ago. (Docket No. 25-1 at 26). NWS and ASTA remain embroiled in the ongoing arbitration. The Arbitrator has now determined that Neal is individually subject to the arbitration agreement, and has consolidated ASTA's claims against Neal with the other claims. Consolidation Order. Neal acknowledges that, as of July 26, 2013, "tens of thousands of pages of discovery ha[d] been exchanged by the parties as well as several hundred thousand emails and four depositions have occurred." Docket No. 11-1 at 4. Neal has fully participated in the arbitrations as NWS's representative. *See, e.g.*, Docket No 42-1 (Exhibit 8) ("Respondent's Motion for Omnibus Relief").[4] That process should be permitted to proceed to an orderly conclusion without the interference of this Court.

In balancing the interests of the parties, I do not find that Neal will be unduly harmed by a stay of this proceeding pending the arbitration. In the event that any of Neal's claims are not arbitrable and are not addressed in the arbitration, he may be able to pursue them in court. It is likely that the Arbitrator's resolution of the arbitrable claims would narrow and focus the nonarbitrable claims, if any, that might remain.

For all of the foregoing reasons, I will stay this action pending the resolution of the arbitration.

### C. The Remaining Motions

*i. Plaintiff's Motion for Sanctions*

Neal has moved for sanctions pursuant to 28 U.S.C. 1927 and the Court's inherent powers, arguing that Defendants and their counsel have engaged in "numerous instances of frivolous conduct . . . ." Docket No. 28-1 at 5. Neal argues, *inter alia*, that he is not party to an arbitration agreement and

---

[4] On August 8, 2013, before the Consolidation Order was issued, Neal signed a Motion for Omnibus Relief, filed as part of the arbitration between ASTA and NWS: David Shaun Neal, Managing Partner, New World Solutions, for the Respondent-Counterclaimant, New World Solutions, Inc. Respondent's Motion for Omnibus Relief.

that Defendants and their counsel have engaged in frivolous conduct, such as evasion of service, unauthorized practice of law, making knowingly false statements to the Court, and filing an "utterly meritless arbitration demand" against Neal. *Id.* at 2–6.

Section 1927 provides:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

28 U.S.C. § 1927. "Although a trial court has broad discretion in managing litigation before it, the principal purpose of imposing sanctions under 28 U.S.C. § 1927 is the 'deterrence of intentional and unnecessary delay in the proceedings.'" *Zuk v. Eastern Pennsylvania Psychiatric Institute*, 103 F.3d 294, 297 (3d Cir. 1996) (quoting *Beatrice Foods v. New England Printing*, 899 F.2d 1171, 1177 (Fed. Cir. 1990)). Section 1927 "requires a court to find an attorney has (1) multiplied proceedings; (2) in an unreasonable and vexatious manner; (3) thereby increasing the cost of the proceedings; and (4) doing so in bad faith or by intentional misconduct." *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 278 F.3d 175, 188 (3d Cir. 2002) (citing *Williams v. Giant Eagle Markets, Inc.*, 883 F.2d 1184, 1191 (3rd Cir. 1989)). Additionally, a court has the inherent power to issue sanctions. Such circumstances that may justify sanctions pursuant to this power include "cases where a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons . . . ." *Id.* at 189 (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45–46 (1991)).

The claimed abuses consist substantially of ASTA's taking positions contrary to Neal in arbitration or litigation, positions that in some cases have been held to be substantially justified. Nor can I find that Defendants have vexatiously multiplied proceedings. In light of the case record, I do not find that sanctions pursuant to Section 1927 or the inherent power of the Court are appropriate here. I exercise my discretion to deny Neal's motion for sanctions.

*ii. Defendants' Cross Motion for Sanctions and for Injunctive Relief*

Defendants have filed a cross motion for sanctions and for injunctive relief. Defendants argue that Neal has filed a multitude of frivolous actions to harass and burden ASTA and its representatives, draining judicial resources and abusing the judicial process in an attempt to further his campaign to harass and abuse ASTA.[5] Docket No. 34-3 at 19–20. They also maintain that Neal failed to disclose certain information and failed to effect service on Defendants as to various motions. *Id.*

The motion for sanctions is denied. Neal's litigation conduct, while perhaps vexatious in the ordinary sense, does not, or at least does not yet, rise to the level of requiring sanctions pursuant to 28 U.S.C. § 1927, the All Writs Act, 8 U.S.C. § 1651(a), or the Court's inherent power. Influenced by my consideration that sanctions are a last resort, and that Neal appears *pro se,* I will exercise my discretion to deny sanctions at the present time. All parties, however, whether *pro se* or represented, are cautioned that the rules of Court must be complied with, and that related claims should not be asserted piecemeal in multiple actions.

The motion for an injunction is likewise denied. Defendants request that the Court restrain Neal from filing any further complaints or motions with respect to ASTA and any of its representatives or agents without leave of court, pursuant to the All Writs Act. (Docket No. 34-1 at 2). The Third Circuit has held that, "while the All Writs Act, 28 U.S.C. § 1651, gives the district court the power to issue an injunction to restrict the filing of meritless pleadings, it is an extreme remedy which must 'be narrowly tailored and sparingly used.'" *Abdul-Akbar v. Watson,* 901 F.2d 329, 332 (3d Cir. 1990) (quoting *Matter of Packer Ave. Associates,* 884 F.2d 745, 747 (3d Cir. 1989)). There is a strong preference for dealing with actions on the merits, rather than precluding their filing altogether. I do not find that the extreme remedy of an injunction is necessary here, particularly in light of the fact that this case, at least, will now be stayed pending the outcome of arbitration.

### iii. *Other pending matters*

Neal has moved for this Court to stay the arbitration pending the resolution of his claims in this Court. As explained above, I have stayed this action in order to permit arbitration to proceed. In light of my resolution of those issues, Neal's application is denied.

---

[5] *See* list of other actions and proceedings filed by Neal at n.1, *supra*.

As noted above, Magistrate Judge Hammer denied Neal's motion to vacate the Arbitrator's Turnover Order (Docket No. 35). Neal recently moved for reconsideration of Judge Hammer's order (Docket No. 39). That reconsideration motion will be denied in light of my stay of this action. The Court does not find it appropriate to interfere with such interlocutory rulings in the arbitration.

## CONCLUSION

Defendants' motion to dismiss Neal's claims for failure to state a claim is **DENIED** as presented and administratively terminated without prejudice. Meanwhile, this entire action is **STAYED** pending the outcome of the ongoing arbitration. Plaintiff's motion for sanctions is **DENIED**. Defendants' cross motion for sanctions and injunctive relief is **DENIED**. Plaintiff's motion to stay the arbitration is **DENIED**. Plaintiff's motion for reconsideration of Magistrate Judge Hammer's order declining to vacate the Arbitrator's Turnover Order is **DENIED**.

An appropriate order follows.

*Amended opinion filed January 6, 2014*

_____
**KEVIN MCNULTY**
**United States District Judge**