| | |
|---|---|
| DAVID SHAUN NEAL,<br><br>    Plaintiff,<br><br>v.<br><br>ASTA FUNDING, INC.,<br><br>    Defendant. | Civ. No. 13-3438 (KM) (MAH)<br><br>OPINION |

**KEVIN MCNULTY, U.S.D.J.:**

This action, stayed by prior order of the Court, is one of many arising from a dispute between the plaintiff, Mr. Neal (and persons or entities associated with him), and the defendant, ASTA Funding, Inc. ("ASTA"). It comes before the Court on ASTA's motion (DE 82) to dismiss the first amended complaint for failure to state a claim, pursuant to Rule 12(b)(6), Fed. R. Civ. P.[1] This action is brought by Neal in his alleged capacity as an employee of ASTA; the only relief sought is reinstatement of prior employment. Because prior rulings establish that Neal was not an employee of ASTA, the motion to dismiss the first amended complaint is granted. *See* Section II.B.2. Because further amendment would be futile, that dismissal is with prejudice. *See* Section II.B.3.

---

[1]    Some record items referred to repeatedly will be cited as follows:

| | |
|---|---|
| DE __ = | Docket entries in this action. Docket entries in other actions are preceded by the civil case number |
| ITS Agreement = | Agreement between ASTA and NWS, containing arbitration clause (DE 82-6) |
| Jurisdiction Award  = | Partial Final Award (Jurisdiction) in arbitration (DE 82-7) |
| Nonconfidential Award = | Nonconfidential Summary Arbitration Award (copy at 13cv6981 DE 132 at 2) |
| Confirmation Decision = | Decision of this Court confirming arbitration award (13cv6981 DE 167, 168) |
| IAC ¶ __ = | First amended complaint (DE 75-1; docketing noted at DE 77) |

## I. BACKGROUND

I briefly summarize items of the complex procedural history that are particularly relevant to the motion to dismiss now before the Court.

### A. This Action and the Stay

On June 3, 2013, Neal filed this action against ASTA and a number of ASTA employees, alleging that he was improperly discriminated and retaliated against for whistleblowing activity. (DE 1) The claims arose under, *inter alia,* the Dodd-Frank and Sarbanes Oxley statutes.[2]

ASTA moved to dismiss the original complaint, arguing that any such claims could be pursued only in a then-pending arbitration. (DE 25) Neal, on the other hand, sought to stay the pending arbitration, contending that all claims, including these, belonged in court. Most pertinently, Neal asserted that the arbitration clause in the underlying ITS Agreement extended only to NWS, an entity with which he was affiliated, and not to him personally.[3]

The arbitrator, pursuant to his power to determine his own jurisdiction, ruled preliminarily that Neal was personally subject to the arbitration clause in the ITS Agreement. On December 4, 2013, I held that there was an insufficient basis to stay the arbitration as against Neal:

> ASTA initiated arbitration on July 26, 2012, well over a year ago. (Docket No. 25-1 at 26). NWS and ASTA remain embroiled in the ongoing arbitration. The arbitrator has now determined that Neal is individually subject to the arbitration agreement, and has consolidated ASTA's claims against Neal with the other claims. Consolidation Order. Neal acknowledges that, as of July 26, 2013, "tens of thousands of pages of discovery ha[d] been exchanged by

---

[2]　*See* Dodd-Frank Wall Street Reform and Consumer Protection Act, 12 U.S.C. § 5567 ("Dodd-Frank"); Sarbanes Oxley Act, 18 U.S.C. § 1514A ("SOX"). The original complaint asserted other claims, which have been dropped from the first amended complaint. The individuals named as defendants in the original complaint have likewise been dropped from the first amended complaint, which names only ASTA.

[3]　The ITS Consulting Agreement ("ITS Agreement") between ASTA and NWS, a company of which Neal is a principal and owner, contains a broad arbitration clause. It provides for arbitration of any "dispute, controversy or claim between the parties" that arises "directly or indirectly out of or in connection with" the Agreement. ITS Agreement § 6.2 (DE 82-6).

the parties as well as several hundred thousand emails and four depositions have occurred." Docket No. 11-1 at 4. Neal has fully participated in the arbitrations as NWS's representative. *See, e.g.,* Docket No 42-1 (Exhibit 8) ("Respondent's Motion for Omnibus Relief"). [A footnote cites Neal's signing of a motion in the arbitration for omnibus relief as "Managing Partner, New World Solutions, for the Respondent-Counterclaimant, New World Solutions, Inc."]

(Opinion (as amended Jan. 6, 2014), DE 48 at 9) I thus denied Neal's motion to stay the arbitration, and stayed this action pending the outcome of the arbitration. (*See id*; Order, DE 45.)

### B. Declaratory Judgment Action

On November 18, 2013 (slightly preceding my ruling in this action, summarized immediately above), Neal filed another complaint in this Court. In it, he sought, *inter alia,* a declaratory judgment that he was not personally subject to the arbitration clause in the ITS Agreement and could not be compelled to arbitrate. ("DJ Action", 13cv6981) Other actions and motions seeking to enjoin, stay, confirm, or vacate decisions of the arbitrator followed. (Many are summarized more fully in 13cv6981 DE 167.)

As noted above, the arbitrator had already found that the ITS Agreement's arbitration clause extended to Neal personally. I recognized, however, that the issue of the arbitrator's jurisdiction over Neal would inevitably be contested in this court in connection with any future motion to confirm or vacate any arbitration award. Therefore, on March 7, 2014, after directing the parties to relevant case law, I authorized them to take expedited discovery relevant to the issue of the arbitrator's jurisdiction over Neal. (13cv6981 DE 44, 167, 168 at 17–18)

### C. Arbitrator's Jurisdiction Award and Final Award

On March 5, 2014, the arbitrator issued a Partial Final Award, which constituted his final and definitive ruling as to the parties over whom he possessed jurisdiction. With the benefit of a full record, the arbitrator confirmed his earlier ruling that he had jurisdiction over the contracting parties, ASTA and NWS. He also confirmed his earlier ruling that he had

jurisdiction over two individuals, Mr. Neal and Robert Coyne, on theories of veil-piercing/alter ego and equitable estoppel. (Jurisdiction Award, DE 82-7)

On April 2, 2014, the arbitrator entered his Nonconfidential Final Summary Award. (Nonconfidential Award, *see* 13cv6981 DE 132 at 2)[4] In that final award, the arbitrator found that "NWS committed multiple material breaches" of the ITS Agreement. (*Id.*) He confirmed and reincorporated his prior finding that the corporate veil of NWS (technically, NWS-DE and NWS-WY), should be pierced because Neal and Coyne disregarded corporate formalities and treated it as an alter ego or a mere financial conduit. Neal and Coyne, he found factually, "committed common law and consumer fraud" and violated the Federal Computer Fraud and Abuse Act ("CFA") and the New Jersey Computer Related Offenses Act ("NJCROA"). (*Id.* at 2–3) The major components of the damages award were these: the arbitrator awarded ASTA damages in excess of $2.9 million against NWS, Neal and Coyne, jointly and severally, and an additional $230,000 against NWS and Neal only.[5] (*Id.* at 6)

---

[4]    The arbitrator simultaneously filed a more detailed confidential award, which I do not cite here. (13cv6981 DE 138 (sealed)) The Dodd-Frank and SOX claims asserted in this action were not adjudicated as part of the award.

[5]    Here is the Third Circuit's succinct summary of the procedural posture:

> After ASTA filed an arbitration action against NWS, Neal, and Coyne pursuant to an arbitration clause in the ITS Agreement, asserting fraud, breach of contract, and other claims, Neal and Coyne objected that the claims against them were not arbitrable because neither of them signed the ITS Agreement and that the question of arbitrability, in any event, must be resolved by a court, not by the arbitrator. The arbitrator disagreed, concluding that the issue was his to decide and that both Neal and Coyne were personally bound by the ITS agreement under a veil-piercing/alter-ego theory, among others.

> The arbitrator ultimately issued a liability award of over $3 million against Neal and Coyne, which they sought to vacate, and which ASTA sought to confirm.

*Neal v. ASTA Funding, Inc.,* __ F. App'x __, 2018 WL 5877237 (3d Cir. Nov. 8, 2018), *cert. petition filed,* Jan. 30, 2019, slip op. at 4.

### D. Motions to Confirm or Vacate Arbitration Award

The arbitration award was the subject of cross-motions to confirm or vacate.[6] On June 30, 2016, I granted summary judgment granting the motion to confirm and denying the motions to vacate the award. (Confirmation Decision (13cv6981 DE 167); Order (13cv6981 DE 168).)

As to the entity defendant, NWS, confirmation was not contested. I confirmed the $3 million award as against NWS. (*Id.*)

As to Neal, I upheld the arbitrator's Jurisdiction Award. I first affirmed the arbitrator's authority to determine his own jurisdiction. (Confirmation Decision at 25–29) I upheld the arbitrator's finding, based on the record before him, that the ITS Agreement between ASTA and NWS, which contained the arbitration clause, bound Neal individually. The parties submitted cross-motions for summary judgment.[7] Setting aside deference to the arbitrator's reasoning, I made an independent determination that Neal was bound by the arbitration clause in the ITS Agreement, and therefore was bound by the arbitration award. (*Id.* at 29–38) I then confirmed the award as against Neal individually. (*Id.* at 38–40)

In a non-precedential decision dated November 8, 2018, the U.S. Court of Appeals for the Third Circuit affirmed this court's Confirmation Decision. (13cv6981 DE 184, 185, reported as *Neal v. ASTA Funding, Inc.,* ___ F. App'x ___, 2018 WL 5877237 (3d Cir. Nov. 8, 2018), *cert. petition filed,* Jan. 30, 2019.)

### E. The First Amended Complaint in This Action

The first amended complaint in this action was filed on June 26, 2018. Neal has now dropped the individual defendants, but continues to assert

---

[6]     The confirmation proceedings for the arbitration award implicated four actions, consolidated for limited purposes. They are (1) Neal's DJ Action seeking a declaratory judgment that he is or was not individually bound to arbitrate (Civ. No. 13-6981); (2) ASTA's petition to confirm the arbitration award (Civ. No. 14-2495); (3) Neal's petition to vacate the arbitration award (Civ. No. 14-3550); and (4) Coyne's petition to vacate the arbitration award (Civ. No. 14-3932).

[7]     In the interim, recall, I had permitted discovery on the issue of the arbitration agreement's application to Neal. There seemed to have been little or no compliance with discovery demands, however.

claims against ASTA. Neal alleges that he was an employee of ASTA, and that he reported illegal or unethical activities internally. ASTA, he says, retaliated against him, in violation of Dodd-Frank and SOX.

Neal estimates that between 2006 and 2012 he made 100 reports to ASTA (but not the authorities) of illegal and unethical activity. (1AC ¶¶ 262–64)

Neal alleges that he learned and reported to senior ASTA personnel that there had been improper collections of accounts amounting to $100,000, but that ASTA took no steps to remedy the situation. (1AC ¶¶ 58–61) He also discovered and reported that ASTA was improperly calculating accrued post-judgment interest. (1AC ¶¶ 62–82) Surveying accounts with negative balances, Neal discovered and reported that customers were owed refunds, which ASTA had not paid. (1AC ¶¶ 83–95) The dates of these events are not alleged clearly, but they seem to have occurred in 2006 and thereafter.

In 2009, Neal alleges, he discovered a discrepancy in 6,500 payments totaling $1.5 million which had been received from a third-party receiver in connection with "the state bankruptcy of Mann Bracken/Axiant." (1AC ¶ 96) His efforts to obtain accurate information from the receiver were fruitless, and ASTA declined to file suit for fear of exposing the incorrect balances in its own systems. (1AC ¶¶ 96–140)

Apparently in approximately 2005–07, Neal identified 50,000 accounts, serviced by third party collectors, that were improperly collected or improperly treated by ASTA. Neal told responsible persons at ASTA that refunds should issue and that ASTA's systems should be corrected. (1AC ¶¶ 141–57)

In 2008, in response to a lawsuit against ASTA, Neal determined that the company was incorrectly merging pre- and post-chargeoff interest. This resulted in improper compounding of interest when judgment was obtained. ASTA never vacated the judgments or took other corrective action. (1AC ¶¶ 158–80)

In 2007, ASTA acquired the "Great Seneca" portfolio, but later learned from the seller that principal, interest, and fees had been improperly

aggregated. Neal informed ASTA that they were collecting improper balances, but the company did nothing to correct it. (1AC ¶¶ 181–95)

Beginning in 2008, Neal identified reconciliation issues with third party servicers. ASTA did nothing to correct them. (1AC ¶¶ 195–207)

Beginning in 2007, ASTA implemented a system for transmitting debtor files to third parties. Neal identified flaws which resulted in the same accounts being sent to multiple third parties for collection. (1AC ¶¶ 208–18)

In 2008, Neal suggested implementing a system to ensure that the dollar amounts of judgments corresponded to what was requested in complaints. ASTA did not implement the system. (1AC ¶¶ 219–32)

Beginning in 2007, Neal determined that ASTA was improperly calculating the statute of limitations in certain states and was filing suit after it had expired. (1AC ¶¶ 233–47)

In 2010, the CEO participated in a wire fraud scheme whereby a person's salary was diverted to another to assist in the concealment of assets in a divorce. (1AC ¶¶ 248–61)

In the period 2011–12, ASTA retaliated against Neal in various ways, including "setting him up" for termination. Ultimately, in 2012, ASTA allegedly terminated Neal's employment. (1AC ¶¶ 265–72)

The First Amended Complaint asserts two causes of action:

(1) Violation of the Dodd-Frank Wall Street Reform and Consumer Protection Act, 12 U.S.C. § 5567 the ("Dodd-Frank" count) (1AC ¶¶ 273–78)

(2) Violation of the Sarbanes Oxley Act, 18 U.S.C. § 1514A (the "SOX" count) (1AC ¶¶ 279–86)

The requested relief is narrow: under Dodd-Frank and SOX, Neal seeks "reinstatement with the same seniority status that the employee would have had, but for the discharge or discrimination." (1AC p.22, Request for Relief)

## II. DISCUSSION

### A. Arbitrability

ASTA moves the Court to dismiss the first amended complaint for failure to state a claim. In the alternative, however, ASTA says that any claims remaining after the Rule 12(b)(6) analysis should once again be referred to arbitration. Neal responds that ASTA cannot have it both ways, and that it has waived arbitration of the Dodd-Frank and SOX claims.

Waiver of an arbitral forum may be found where a party has not pursued claims in arbitration and the court proceedings have progressed significantly. *See Hoxworth v. Blinder, Robinson & Co., Inc.*, 980 F.2d 912, 926-27 (3d Cir. 1992). *Hoxworth* provided a non-exclusive list of factors relevant to the waiver inquiry, including (1) timeliness of motion to arbitrate; (2) degree to which the party seeking to compel arbitration has contested the merits of its opponent's claims; (3) whether that party has informed its adversary of its intent to arbitrate even if it has not yet filed a motion to compel; (4) the extent of its non-merits motion practice; (5) its assent to the district court's pretrial orders; and (6) the extent to which both parties have engaged in discovery. *Id.*

The opportunity to arbitrate was afforded years ago. In December 2013, I stayed this action pending the outcome of the arbitration, leaving it to the arbitrator to determine his own jurisdiction and hear the claims as appropriate. (*See* Order, DE 45; Opinion, DE 48) That did not occur; perhaps no one pressed these claims before the arbitrator.[8] The arbitration ended with a final award on the fraud claims and counterclaims, but no ruling on the specific Dodd-Frank or SOX claims asserted here. The arbitrator is now *functus officio*.

Despite having been awarded a stay of this action pending the outcome of the pending arbitration, ASTA seemingly failed to press for a hearing of these claims in the arbitration, which is now over. Here, ASTA has invoked the court's jurisdiction, filing a Rule 12(b)(6) motion to dismiss the first amended

---

[8]     These Dodd-Frank and SOX claims belonged to Neal, but the party pushing for arbitration of them would necessarily have been ASTA. Neal, it was clear, did not want an arbitral forum in the first place.

complaint; only if the court does not dismiss the claims, says ASTA, should it refer them to arbitration. ASTA's actions may be taken as acquiescence in this court's jurisdiction and a waiver of the arbitral forum. Neal, although he opposes the motion to dismiss, does not object to and indeed insists on the matter being heard here. I will therefore decide the motion.

## B. Motion to Dismiss

### 1. Applicable standards

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, if it fails to state a claim upon which relief can be granted. The defendant, as the moving party, bears the burden of showing that no claim has been stated. *Animal Science Products, Inc. v. China Minmetals Corp.*, 654 F.3d 462, 469 n. 9 (3d Cir. 2011). For the purposes of a motion to dismiss, the facts alleged in the complaint are accepted as true and all reasonable inferences are drawn in favor of the plaintiff. *New Jersey Carpenters & the Trustees Thereof v. Tishman Const. Corp. of New Jersey*, 760 F.3d 297, 302 (3d Cir. 2014).

Federal Rule of Civil Procedure 8(a) does not require that a complaint contain detailed factual allegations. Nevertheless, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus, the complaint's factual allegations must be sufficient to raise a plaintiff's right to relief above a speculative level, so that a claim is "plausible on its face." *Id.* at 570; *see also West Run Student Housing Assocs., LLC v. Huntington Nat. Bank*, 712 F.3d 165, 169 (3d Cir. 2013). That facial-plausibility standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). While "[t]he plausibility standard is not akin to a 'probability requirement' . . . it asks for more than a sheer possibility." *Iqbal*, 556 U.S. at 678.

Affirmative defenses, such as res judicata or the statute of limitations, may raise issues of fact unsuitable for resolution under the Rule 12(b)(6) standards outlined above. In a proper case, however, such defenses may be cognizable on a motion to dismiss:

> We held in *Bethel v. Jendoco Constr. Corp.*, 570 F.2d 1168, 1174 (3d Cir. 1978), that if a statute of limitations "bar is not apparent on the face of the complaint, then it may not afford the basis for a dismissal of the complaint under Rule 12(b)(6)." This holding applies not only to a statute of limitations defense, but also to any affirmative defense raised pursuant to Rule 8(c), including res judicata and the Entire Controversy Doctrine.

*Rycoline Products, Inc. v. C & W Unlimited*, 109 F.3d 883, 886 (3d Cir. 1997) (emphasis added). Thus res judicata may be considered on a Rule 12(b)(6) motion, where, as here, the necessary facts are "apparent on the face of the face of the complaint" and other documents properly considered on a motion to dismiss.

Documents properly considered on a motion to dismiss include ones attached to or relied on by the complaint, or ones on which the complaint is based:

> In deciding motions under Rule 12(b)(6), courts may consider "document[s] integral to or explicitly relied upon in the complaint," *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (emphasis in original), or any "undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document," [*Pension Ben. Guar. Corp.*] *v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993).

*In re Asbestos Products Liability Litigation (No. VI)*, 822 F.3d 125, 134 n.7 (3d Cir. 2016). *See also Schmidt v. Skolas,* 770 F.3d 241, 249 (3d Cir. 2014).

On a motion to dismiss, as elsewhere, a court may take judicial notice of decisions of other tribunals:

> [O]n a motion to dismiss, we may take judicial notice of another court's opinion—not for the truth of the facts recited therein, but for the existence of the opinion, which is not subject to reasonable

dispute over its authenticity. *See Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991); *United States v. Wood*, 925 F.2d 1580, 1582 (7th Cir. 1991); *see also Funk v. Commissioner*, 163 F.2d 796, 800–01 (3d Cir. 1947) (whether a court may judicially notice other proceedings depends on what the court is asked to notice and on the circumstances of the instant case).

*S. Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Grp. Ltd.*, 181 F.3d 410, 426-27 (3d Cir. 1999). *See generally* Fed. R. Evid. 201.

Thus, as regards res judicata specifically, a prior decision may be noticed for its existence and its legal effect on the current proceeding. *See, e.g., M & M Stone Co. v. Pennsylvania*, 388 F. App'x 156, 162 (3d Cir. 2010); *Gage v. Warren Twp. Com. & Planning Bd. Members*, 463 F. App'x 68, 71 (3d Cir. 2012). I have therefore taken notice of my own prior decision and the arbitrator's decisions rendered in the course of the Neal/ASTA dispute.

### 2. Neal's status as "employee"

The key allegation of Neal's complaint is that he was an "employee" of ASTA. ASTA asserts that the prior arbitration award, now judicially confirmed, establishes that Neal is not an employee of ASTA. That prior judgment, by way of collateral estoppel (issue preclusion), bars further litigation of Neal's status in this action. Unless Neal is a fired ASTA employee, his sole demand for relief—"reinstatement with the same seniority status that the employee would have had, but for the discharge or discrimination"— falls apart. (1AC p.22, Request for Relief) Because the sustainable factual allegations do not plausibly state an "entitle[ment] to relief," *Twombly,* 550 U.S. at 556, they fail to satisfy Rule 8 pleading standards.

Collateral estoppel, or issue preclusion, "prevents relitigation of a particular fact or legal issue that was litigated in an earlier action." *Seborowski v. Pittsburgh Press Co.,* 188 F.3d 163, 169 (3d Cir.1999) (citing *Parklane Hosiery Co., Inc. v. Shore,* 439 U.S. 322, 326, 99 S. Ct. 645 (1979)). Issue preclusion has five essential prerequisites:

(1) the identical issue was decided in a prior adjudication;

(2) the issue was actually litigated;

(3) there was a final judgment on the merits;

(4) the determination was essential to the earlier judgment; and

(5) the party against whom the doctrine is asserted was a party or in privity with a party to the earlier proceeding.

*Fitzgerald v. Shore Mem'l Hosp.*, 92 F. Supp. 3d 214, 225–26 (D.N.J. 2015) (line breaks added) (citing *Seborowski,* 188 F.3d at 169).[9] I discuss those five requirements, somewhat out of order.

### 1. Identical issue decided

The arbitrator expressly found that Neal was a consultant and director/officer of NWS, and was "not an employee" of ASTA:

Neal was not an employee of NWS or Asta; he became a consultant to NWS -- and was paid via a 1099 from NWS. His initial hiring by

---

[9]     I have cited federal collateral estoppel standards. The arbitration award, as noted above, was confirmed by this federal district court, and the confirmation order was affirmed by the U.S. Court of Appeals for the Third Circuit. Under the Federal Arbitration Act, when an arbitration award is confirmed, "[t]he judgment so entered shall have the same force and effect, in all respects, as, and be subject to all the provisions of law relating to, a judgment in an action; and it may be enforced as if it had been rendered in an action in the court in which it is entered." 9 U.S.C. § 13. Indeed, there is authority that *only* an arbitration award that has been judicially confirmed will be treated as a final judgment with preclusive effect. *Gruntal & Co. v. Steinberg,* 854 F. Supp. 324, 337 (D.N.J.), *aff'd,* 46 F.3d 1116 (3d Cir. 1994); *see McDonald v. City of W. Branch, Mich.,* 466 U.S. 284, 288, 104 S. Ct. 1799, 1802 (1984) (§ 1983 claims not precluded by unconfirmed arbitration award, because, *inter alia,* it is not a state court "judgment" for purposes of full faith and credit act, 28 U.S.C. § 1738). *But see Sheet Metal Workers Int'l Ass'n Local Union No. 27, AFL–CIO v. E.P. Donnelly, Inc.,* 673 F. Supp.2d 313, 320 (D.N.J. 2009) (unconfirmed award). I will therefore treat this confirmed award as a federal judgment for purposes of issue preclusion, and apply federal preclusion standards to determine its effect.

The arbitrator applied New Jersey substantive law. New Jersey issue preclusion standards are similar, however, and would not alter the result. New Jersey follows the usual rule that collateral estoppel bars litigation of facts fully litigated and actually determined in a prior action, even one involving a different claim or cause of action. *See Tarus v. Pine Hill,* 189 N.J. 497, 520 (2007). Just as under federal law, the issue must (1) be identical to the one previously litigated; (2) have been actually litigated; (3) have been asserted in a case that went to judgment on the merits; (4) have been essential to the prior judgment; (5) be asserted against the same party, or one in privity. *See Twp. Of Middletown v. Simon,* 193 N.J. 228, 236 (2008).

ASTA was done through an intermediate consulting entity [Bach Consulting], .... he was therefore a direct beneficiary of any contractual relationship between Asta and that consulting company (Bach or NWS).

(Jurisdiction Award at 23).

Neal, the arbitrator further found, "was an officer and director of NWS, as well as a 50% owner, but he received the bulk of his income from NWS via an IRS form '1099' rather than a W-2, which would indicate that he was 'working' as a 'consultant' for NWS rather than as an employee." (Jurisdiction Award at 11) Neal, the arbitrator confirmed, was paid by NWS, for work performed, not pursuant to any employer/employee contract between ASTA and Neal, but pursuant to the ITS agreement between ASTA and NWS: "Mr. Neal's annual income from *NWS's work at Asta* was in the six-figures . . . ." (*id.* at 12 (emphasis added)); Neal's "continued relationship with NWS and ASTA was derived directly from the [ITS] Agreement"; and Neal "was not a mere employee in that regard—the reason for signing the [ITS] Agreement was to continue his services as IT Manager . . . ." (*Id.* at 23)[10]

As noted above, I confirmed the arbitration award based on the record before the arbitrator, and also made my own, independent determination after affording the parties the opportunity for federal-court discovery on the issue. On cross-motions for summary judgment, I found that there was no evidence that Neal was an employee of ASTA:

In 2004, Neal applied for an information technology service position with Asta, a financial firm incorporated in Delaware with its principal place of business in New Jersey. [citing record] Neal was hired, not as an employee, but as an independent contractor through a separate entity, Bach Consulting, which was owned by

---

[10]     In the arbitration, NWS (not Neal) counterclaimed for damages consisting of payment for its services under the ITS Agreement. (DE 82-10) The Counterclaim alleges that the ITS Agreement provided for "a wide range of information technology services to be provided exclusively by NWS to ASTA," in return for ASTA's payment of NWS's invoices. (*Id.* at pp. 1, 8) The arbitrator found that the Counterclaim was signed and filed by Neal on behalf of NWS. (Jurisdiction Award at 21; *see* Confirmation Decision at 12). It was ultimately denied by the arbitrator.

> Coyne. [citing record] This engagement lasted until 2007, when
> Coyne sought to discontinue the operations of Bach Consulting.
> [citing record] In its place, Coyne and Neal would establish New
> World Solutions, Inc. [citing record]

(Confirmation Decision at 4) In 2009, I found, NWS and ASTA entered into the
ITS Agreement under which NWS, "acting through its personnel," supplied IT
services to ASTA. I determined that Coyne and Neal were 50/50 owners of
NWS, until Coyne conveyed his interest to Neal in December 2012.
(Confirmation Decision 4–5)

To be sure, Neal performed work for ASTA. He did not perform it,
however, as an employee of ASTA (or, for that matter, of NWS). The arbitrator,
in a decision confirmed by this Court and upheld by the Third Circuit, found
factually that Neal was "not an employee of NWS or ASTA," the exact issue as
to which estoppel is sought here.[11]

### 2. *Actually litigated and essential to judgment*

Requirements 2 and 4 are that the issue have been actually litigated and
essential to the prior judgment. For jurisdictional purposes, Mr. Neal distanced
himself from ASTA, maintaining that his services were performed not directly
but pursuant to the ITS Agreement, a consulting agreement between ASTA and
NWS. The issue of Neal's status in relation to ASTA was actually litigated and

---

[11]     ASTA also points out that Neal originally asserted his whistleblower contentions
as administrative claims with OSHA, which found that he was not an employee. On
March 26, 2013, the Secretary of the Department of Labor issued a written decision
that Neal was "not an employee within in the meaning of either 18 U.S.C §1514A
[SOX] or 12 U.S.C §5567 [CFPA]" and dismissed Neal's complaint:

> [Neal] was not able to present evidence that he was an ASTA employee
> within the terms of either CFPA or SOX. He continues to be a partner in
> NWS and did not allege that NWS had in anyway altered the terms,
> conditions or privileges of his employment there. Both CFPA and SOX
> protect employees not companies. . . .

> The contract signed by the NWS and ASTA did not create and employer-
> employee relationship between [ASTA] and any employee of NWS. Based
> on [Neal's] own testimony the same is true during actual implementation
> of the contract.

(DE 82-13)

necessary to the arbitrator's decision, especially his jurisdictional rulings.

The arbitrator ruled preliminarily, over Neal's objection, that Neal was personally subject to the arbitration clause in the ITS Agreement. The arbitrator agreed, however, to "entertain additional factual and legal presentations" on that issue. Both ASTA and Neal "provided materials to [the arbitrator] in that regard . . . ." (Jurisdiction Award 1–2) The arbitrator made his final ruling with the benefit of the transcript of the 6-day hearing, the transcript of Neal's deposition, and the exhibits introduced in evidence. (Jurisdiction Award 11–13)

The arbitrator found factually that Neal worked for and was paid by NWS, which provided services to ASTA, and that Neal was not an employee of ASTA. That conclusion was reached as a result of the issue of Neal's status having been "actually litigated." Neal's status in relation to ASTA (and NWS) was essential to the prior judgment, because it had to be determined in order for the arbitrator to determine whether the ITS Agreement's arbitration clause gave him jurisdiction to adjudicate claims against Neal personally. The arbitrator determined, factually and legally, that Neal was subject to the ITS arbitration agreement, in rulings that he rendered preliminarily and then reconfirmed in final awards.

This Court, too, recognized early on that Neal's status would be foundational to its own judgment. I affirmed the arbitrator's jurisdictional rulings and award, and also made my own independent determination. Without findings as to Neal's status, there could have been no judgment against him.

In short, Neal's status was both actually litigated and essential to the judgment of the arbitrator and this Court.

### 3. Final judgment

Requirement 3 is that the prior judgment have been final. The Jurisdictional Award is captioned as a "Partial Final Award." Its finding of jurisdiction preceded the final award by one month. It merges into the final award, which could not have been entered but for the jurisdictional ruling. The

final award explicitly incorporates the Jurisdictional Award and reiterates that Neal is personally subject to the arbitrator's jurisdiction. The final award disposes of all claims as to all parties. The equivalent of a money judgment, it finds NWS, Neal, and Coyne liable on several fraud-related theories, and awards ASTA $3 million in damages. The award was confirmed by this Court, and the order of confirmation was affirmed by the U.S. Court of Appeals for the Third Circuit.[12] The prior judgment is therefore final.

### 4. Parties identical or in privity

Requirement 5 is that the parties in the prior and present proceedings be identical or in privity. It is undisputed that ASTA and NWS were parties to the arbitration and are parties to this case. Neal, as the arbitrator found, was also a party (however reluctant) to the arbitration: He was found liable as an alter ego of NWS; the award was entered against him personally; this Court confirmed it; and the Third Circuit affirmed. Even setting that aside, Neal was in privity with NWS, which was undeniably a party to the arbitration. As the arbitrator found, Neal was an officer and 50% (later 100%) owner of NWS, and it was in that capacity that he dealt with ASTA.

### 5. Miscellaneous fairness factors

Res judicata doctrines are equitable, and a court must consider the fairness of applying them. Courts—albeit most commonly in more exotic applications, such as offensive collateral estoppel—have considered equitable factors such as the following:

> (a) the party to be estopped had little incentive to vigorously litigate the first action; (b) the first judgment is inconsistent with other judgments on the issue to be estopped; (c) the second action affords procedural opportunities unavailable in the first action (or, more generally speaking that the party to be estopped had a full and fair opportunity to litigate its claims in the first action); or (d) application of collateral estopped would not otherwise be unfair to

---

[12]    As previously noted, there is significant authority that *only* an arbitration award that has been judicially confirmed will be treated as a final judgment with preclusive effect. *See* n. 9, *supra*. Because this award was judicially confirmed, I do not discuss that issue further.

the defendant.

*E.g., Glictronix Corp. v. Am. Tel. & Tel. Co.,* 603 F. Supp. 552, 563–64 (D.N.J. 1984) (citing *Parklane Hosiery, supra*); *see also Mann v. Estate of Meyers,* 61 F. Supp. 3d 508, 518 (D.N.J. 2014) (McNulty, J.) (New Jersey law).

Those factors do not militate against the application of collateral estoppel.

Neal has "vigorously litigate[d]," to say the least, the issue of his status with respect to ASTA and NWS. There are no inconsistent judgments; indeed, ASTA points to consistent judgments in other courts and forums.

Neal had a full and fair opportunity to litigate in prior proceedings. The word "litigate" has a particular meaning, however, in the context of arbitration. It is not controversial, of course, that a court may give preclusive effect to an arbitration award. *Fitzgerald,* 92 F. Supp. 3d at 226. Nevertheless, because arbitration proceedings may lack the procedural safeguards of court proceedings, the courts are admonished to be "cautious" in the application of preclusion doctrines, which in this context are "permissible but not mandatory." *Id.* (quoting *Shtab v. Greate Bay Hotel and Casino, Inc.,* 173 F. Supp. 2d 255, 261 (D.N.J. 2001)). Awards have been given preclusive effect where the arbitration proceedings incorporated the "essential elements of adjudication." *Piscopo v. Pub. Serv. Elec. & Gas Co.*, No. CIV.A. 13-552 ES, 2013 WL 5467112, at *3 (D.N.J. Sept. 27, 2013) (citing *Torre v. Falcon Jet Corp.*, 717 F. Supp. 1063, 1066 (D.N.J.1989) (giving unconfirmed arbitration award preclusive affect, "so long as the arbitration process was fair, the decision was reliable and no exception was provided."). To simplify somewhat, those "essential elements" of adjudication consist of adequate notice, the right to present arguments and evidence, formulation of issues of law and fact, a defined rule of finality and rendering of a decision, and miscellaneous other procedures that may be required under the circumstances. *Piscopo,* 2013 WL 5467112 at *4 (citing Restatement (Second) of Judgments §§ 83, 84).

In the course of the motions to confirm or vacate the award, I had the

opportunity to review the arbitration proceedings. The award was confirmed because, despite Neal's non-cooperation, those proceedings were thorough, procedurally regular, and quasi-judicial. The issues were briefed and fully explored, and the arbitrator heard six days of testimony. He rendered reasoned, written awards. I therefore find that this arbitration award is an appropriate subject for the application of issue preclusion. In addition, as pointed out above, I afforded Neal the additional opportunity to take discovery and litigate the issue of his status in this court, and made my own, independent determination in the course of confirmation.

All five prerequisites of collateral estoppel, then, are met, and the fairness factors do not point the other way.

In response, Neal offers a single argument. The arbitration and prior actions, he says, did not decide the Dodd-Frank and SOX claims asserted in this action. That is true, but beside the point. ASTA is not asserting claim preclusion, but issue preclusion. *See Robinson v. Section 23 Prop. Owner's Ass'n, Inc.*, No. 1:16-CV-09384-NLH-JS, 2019 WL 277593, at *1 (D.N.J. Jan. 22, 2019) (dismissal on jurisdictional grounds does not support claim preclusion, but may nevertheless support issue preclusion as to issues that were decided). The issue decided in the prior proceedings is the fact that Neal was not an employee of ASTA, but rather a consultant and officer of NWS.

It is *res judicata* that Neal's relationship with ASTA was not an employer-employee relationship, and he is collaterally estopped from asserting that fact here. Because Neal's status as an employee of ASTA is foundational to his claims and the relief of reinstatement that he seeks, the motion to dismiss the complaint for failure to state a claim is granted.[13]

---

[13]     ASTA argues in addition that a New York state's application of collateral estoppel in another action filed by Neal bars this action; that this action is barred by New Jersey's entire controversy doctrine; and that the first amended complaint fails to plead any of the factual indicia of an employer-employee relationship under traditional principles of master-servant law. Also running through ASTA's presentation is a contention that the amended allegations are a sham, because Neal has simply omitted his prior allegations in the original complaint that he was employed and paid by Bach Consulting and NWS, which contracted with ASTA. I do not reach those arguments.

### 3. Futility of amendment under Dodd-Frank and SOX

The question remains whether the dismissal should be entered with prejudice because further amendment of the first amended complaint would be futile. ASTA suggests that Neal's inability to allege employee status is not just a pleading deficiency under *Twombly* and *Iqbal*. Rather, behind the factual deficiency identified in Section II.B.2, *supra*, lurks a claim of legal deficiency. An employer-employee relationship between Neal and ASTA, it says, would be an essential element of *any* retaliation claim against ASTA under SOX and Dodd-Frank. I agree; the dismissal will be entered with prejudice.

I discuss this issue in the context of dismissal with or without prejudice because of the manner in which Neal presents it. Neal argues that the class of persons protected by SOX includes not only employees of the public company, but also employees of independent contractors. *See Lawson v. FMR,* 571 U.S. 429, 134 S. Ct. 1158 (2014). The first amended complaint does not allege, however, that Neal is an employee of the independent contractor, NWS. The implication may be that in a second amended complaint, Neal could shift ground again, assert that he is an employee *of NWS,* and in that capacity assert a SOX claim *against ASTA.* That is a misreading of *Lawson.*

The "whistleblower" provisions of SOX protect employees who report certain illegal activity against retaliation or discrimination. SOX "applies to all 'employees' who report misconduct" to the SEC, certain other federal authorities, or a supervisor. *Digital Realty Trust, Inc. v. Somers,* 138 S. Ct. 767, 778 (2018). The relevant retaliation provision of SOX provides as follows:

> No [public] company . . ., or any officer, employee, contractor, subcontractor, or agent of such company, may discharge, demote, suspend, threaten, harass, or in any other manner discriminate against an employee in the terms and conditions of employment because of [whistleblowing or other protected activity].

18 U.S.C. §1514A(a). The statute, then, speaks in terms of a company taking

action against an employee (or agent, or contractor) "of such company."[14]

In *Lawson,* the Court, per Justice Ginsburg, held that "the provision shelters employees of private contractors and subcontractors, just as it shelters employees of the public company served by the contractors and subcontractors." 529 U.S. at 433. *Lawson* did not hold, however, that the employees of the contractors had a SOX cause of action *against the public company.* Rather, they, as employees, had a SOX cause of action based on retaliation *by their own employers*:

> Taking the allegations of the complaint as true, both plaintiffs blew the whistle on putative fraud relating to the mutual funds and, as a consequence, suffered adverse action by their employers. Plaintiffs read §1514A to convey that "[n]o . . . contractor . . . may . . . discriminate against [its own] employee [for whistleblowing]." We find that reading consistent with the text of the statute and with common sense. Contractors are in control of their own employees, but are not ordinarily positioned to control someone else's workers. Moreover, we resist attributing to Congress a purpose to stop a contractor from retaliating against whistleblowers employed by the public company the contractor serves, while leaving the contractor free to retaliate against its own employees when they reveal corporate fraud.

*Id.* at 433. The Court reasoned that, in enacting SOX § 1514A, "Congress presumed an employer-employee relationship *between the retaliator and the whistleblowing employee.*" 571 U.S. at 442 (emphasis added).

That conclusion flowed initially from the forms of retaliation prohibited by the statute: "discharge, demotion, suspension, threats, harassment or discrimination in employment terms and conditions." These, the Court wrote, "are actions that an employer takes against *its own* employees." *Id.* (emphasis added).

In addition, wrote Justice Ginsburg, "Section 1514A's enforcement

---

[14]    Although Neal does not discuss Dodd-Frank, the two statutes are similar in this regard. Dodd-Frank applies to any "'*covered employee*' who, among other things, 'provide[s] information to [his or her] employer . . . relating to'" certain violations under the jurisdiction of the Consumer Financial Bureau. *Digital Realty,* 138 S. Ct. at 777 (quoting 12 U.S.C. § 5567(a)(1)).

procedures and remedies similarly contemplate that *the whistleblower is an employee of the retaliator.*" 571 U.S. at 443 (emphasis added). Thus, for example, SOX entitles a successful claimant to "'reinstatement with the same seniority status that the employee would have had, but for the discrimination,' as well as "the amount of back pay, with interest.' . . . . The most sensible reading of § 1514A's numerous references to an employer-employee relationship between the respondent and the claimant is that the provision's protections run *between contractors and their own employees.*" *Id.* (quoting SOX § 1514A(c)(2) (emphasis added).

The holding of *Lawson,* read onto the facts of this case, establishes that Neal, *qua* employee of NWS, would not have a SOX cause of action against ASTA. At most, Neal could assert such a claim against his employer, NWS. The sole SOX relief sought by Neal in this action is restoration of his employment. ASTA cannot restore Neal's employment; it never employed him. In short, under *Lawson,* Neal's employment by NWS would not confer upon him a SOX claim against ASTA.[15]

The question reamains as to whether the court should dismiss the first amended complaint with prejudice, or grant leave to file a second amended complaint. The Third Circuit has liberally permitted pleading amendments to ensure that "a particular claim will be decided on the merits rather than on technicalities." *Dole v. Arco Chem. Co.,* 921 F.2d 484, 487 (3d Cir. 1990). Indeed, where a complaint is subject to an initial dismissal on Rule 12(b)(6) grounds, "a District Court must permit a curative amendment, unless an amendment would be inequitable or futile." *Alston v. Parker,* 363 F.3d 229, 235 (3d Cir. 2004) (emphasis added). *Accord Phillips v. Cty. of Allegheny,* 515 F.3d 224, 236 (3d Cir. 2008) (citing *Grayson v. Mayview State Hosp.,* 293 F.3d 103, 108 (3d Cir. 2002) (citing *Shane v. Fauver,* 213 F.3d 113, 116 (3d Cir. 2000)).

Here, Neal has already taken advantage of one opportunity to amend his

---

[15]     I posit Neal's status as an NWS employee *arguendo,* but the arbitrator also found that Neal was not an employee, but rather an owner, of NWS.

complaint, and has filed multiple lawsuits arising from the same dispute. The first amended complaint asserts claims for reinstatement of employment, under statutes that grant remedies within the framework of an employer/employee relationship. Because it is *res judicata* that Neal was not an ASTA employee, further amendment would be futile. The dismissal of the first amended complaint will therefore be entered with prejudice.

## CONCLUSION

Defendant ASTA's motion (DE 82) to dismiss the first amended complaint is GRANTED, with prejudice. Its alternative motion to refer the case to arbitration is denied. An appropriate order follows.

**KEVIN MCNULTY**
**United States District Judge**